Good morning, judges, and may it please the Court. My name is Stephen Stamboulia for Mr. Roberts. I would like to reserve two minutes for rebuttal, please. Please watch your clock. Of course, Your Honor. So, why are we here, judges? This is a case on an electric arm. All of the courts that have ruled on this particular issue have ruled that the electric arm is protected by the Second Amendment. All of the courts except this one. The district court in this case, we had a hearing on November 26, 2019, and at the end of the hearing, the district judge, which is her discretion to do so, immediately stayed the case pending New York Rifle I, a Supreme Court case. That case was ultimately mooted. So, we, for Mr. Roberts, went and asked the court to lift the stay, and the court refused to do so because, of course, Young was going up to the Embank Ninth Circuit panel. So, after the Ninth Circuit ruled, and Monk, that we didn't have a right to carry outside the home, fine. Mr. Roberts, we went back to the court and asked the court, Judge, this is part of what you said we were going to stay the case for. Would you lift the stay, please? And, of course, the answer was no. We're not going to lift the stay because we have Young going to the Supreme Court now, and we have New York Rifle II going to the Supreme Court now. And then we also have a legislative fix. Now, granted, the legislature has tried and failed two times prior to this, and on the third try they finally got it right. So, third time's the charm. But, anyways, we have a plaintiff here who has come into court with an allegation that his constitutional rights were violated, and the court did nothing. And I don't believe, as a practitioner in these courts, that we can allow courts to do this. Now, granted, the courts have wide discretion in order to stay cases, pending other cases that might impact those cases that are in front of them. But electric arms, stun guns, and tasers, it's not something so outside the norm that the court couldn't fashion something. And I'll give you an example. In New York in March of 2019, the Northern District Judge, Judge Hurd, ruled that a categorical ban on electric arms was unconstitutional. We finished briefing in this case and had an argument in November of 2019, well after the New York case was decided, and well after, like, four other cases were also decided, all applying this two-step test. It's no longer a good law, but it's all applying the two-step test. Now, after Bruin, we have the one-step test, which is, is it protected under the Second Amendment? Boom, we stop. We have some other stuff. It's an overgeneralization. But we went on intermediate scrutiny on all the other cases. Now it's a much easier road to hoe. But the court, I'm sorry, yes, ma'am. Well, my question is, and I sympathize with the endless continuance and stays, not continuance, stays, and I can reasonably anticipate that there are going to be a host of new gun cases challenging various aspects of gun regulation in the wake of Bruin. But why isn't this case moved either by the fact that Hawaii has enacted a statute now that regulates the use of electric arms or Bruin? That's a good question. So, number one, it's not moved because we have a damages aspect. And if we remember New York Rifle I, of course it was against New York City, but the Supreme Court held that if there was a damages component, which they did not have in New York Rifle I, then it wouldn't be moved because we still had something else the court could give us. Now we have a state defendant, right, so it's a little bit different. We have sovereign immunity to contend with. But apparently the state didn't do anything with sovereign immunity except raise it in their answer once in a little line. We're sovereign immunity. They didn't press it in their summary judgment briefing. They didn't press it in their motion for summary judgment. And we have lots of cases that are cited in our briefs, in our reply briefs, that say, you know, the state can't, I mean, it doesn't exactly say this, but the gist of it is the state has to continue to press its sovereign immunity defense. It's something that can be waived, and that's just straight-up Ninth Circuit precedent. I believe this Ajo, I'm going to say it wrong, I'm sorry, Ajolele 488 F3rd 1144, which was cited in the state's brief, you know, the issue of whether the state defendants waived their sovereign immunity, so it obviously can be waived, is purely a legal issue, which can be decided on the record that has been developed below in the court, the Ninth Circuit, exercised their discretion and considered the waiver issue. In that case, they found that the state did not waive their sovereign immunity because, sorry, they filed their answer, raising it, but they also briefed it in their summary judgment motion, and the court granted, you know, based on that sovereign immunity and the summary judgment motion. Here, nothing. We have the answer, 2018, 2019, and then right when we said, we still have damages in this case as a moot, oh, we have sovereign immunity. But that's not the way it works. You know, they have to, like, it's an affirmative defense. You have to press an affirmative defense by motion or by some other means, argue it in your summary judgment brief. You can't delay and then come in at the last minute and say, ha-ha, you know, sovereign immunity, sorry that you wasted all this time and money doing this. Let me jump in real quick because you've got three minutes before your rebuttal. Bottom line, what do you want us to do in this case? Okay, bottom line, what I want, this case is not moot because we have a damages component. The state has waived their sovereign immunity. I would ask that it be remanded. I am searching for my words here because I don't think if this court remands it back down to the district court that the district court is going to do anything. And I can tell you that I know that because if we look at the excerpt of record 009, the court, because the case is stayed, the court will not act until the Young proceedings have concluded. Young has obviously been GVR'd and is going to go down to the Embankment 9th Circuit procedurally. I don't actually understand it, but Embankment, then three panel, and then maybe back to the district court judge. When is that case going to be concluded? Who knows? What I want the court to do, what I'd like the court to do, is say that when a plaintiff comes in, granted you have discretion, you can't just not rule on something. I don't care what case it's for because I know there's a lot of stuff going on with the abortion rights right now. If we had a really conservative judge in Idaho, are they going to hold a case saying, we're just not going to rule on it because there could be some other case coming down. Either way, I think it's wrong. So you're looking, it sounds like an order from us saying that the district court, remand the district court and lie to the Supreme Court's latest decision, the New York case that just came down, and just say that the district court shall expeditiously resolve this case, or something with instructions like that. Right, and I think what it's going to be is on the damages aspect because I think the taser bill, I'm going to be candid with the court, the plaintiff has his taser now, right? And it took a long time. This law was signed in July of 2021. It went into effect in January. They wouldn't even give people tasers until like March and April. We ended up having to sue Maui again to get them to start giving licenses to sell tasers. So I think the portion of it about taser, that's moot, we've got tasers now. I think the portion on damages is not. And as the Aholele case says in Star 4, that's a purely legal issue and the court can exercise its discretion to answer that. But is that before us, or should we remand that issue to the district court? Well, for the sovereign immunity, I think this court can answer it if we look at the Aholele case. But whether or not, like the amount of damages, I think that has to go back because the district court, of course, never ruled on it, and this is a court of review and not a first view. So I think that's appropriate. But I'm concerned going back down, Judge. I mean, just completely honest. I'm very concerned. It's always important to know what you want us to do. I want to make sure we're clear on what you want us to do. All right, thank you. Thank you so much. Okay, Mr. Nakatsugi. Good morning, Your Honors. My name is Robert Nakatsugi, and I'm a Deputy Attorney General for the State of Hawaii. I represent the defendants' appellees in this case. May it please the court. Your Honors, this case is moot on many different levels.   and the defendant's attorney general are both defendants. The defendant's attorney general, the primary statute challenged by plaintiff, HRS 134-16, was repealed, was expressly repealed by Act 183. The other statute challenged by plaintiffs, HRS 134-51, it either never applied to electric guns in the first place or that claim was also rendered moot by Act 183. We ask the court to dismiss this appeal, remand to the district court with instructions to dismiss the entire complaint with prejudice. This appeal is moot on another basis as well. As the court knows, the U.S. Supreme Court has issued decisions in the Bruin case as well as in the Young case. So therefore, the district court's stay has expired on its own terms. So there's really nothing left of this appeal. So this court definitely could dismiss this appeal. However, we're asking the court to rule on mootness, and the reason why we're doing that is to give guidance to the district court. I think if a decision from this court very clearly says that this case is moot, I think it will end litigation. It will prevent this case from coming back here on another appeal, and, you know, in a year, we'd be arguing about the very same issues all over again. As for Mr. Stamboulier's argument about the damages claim, I'd like to point out to the court that one of the original defendants in this case was Chief Ballard, who is the Honolulu Chief of Police. And so she's a local official, and therefore, the damages claim was related more toward her possible liability under Monell liability as a local official. But Chief Ballard was dismissed from this case pretty early on, so the only defendants left are state officials acting in their official capacity. So 11th Amendment immunity protects these officials, so there really isn't a damage claim anymore. Now... I don't believe we have waived anything, Your Honor. Your Honor, we raised it in the answers to the complaint. In addition, you know, when the motions for summary judgment were being litigated, those motions focused on the Second Amendment aspects of 134-16. In fact, they really didn't even get into 134-51, or anything else for that matter. So those motions actually didn't address all the claims. They were more in the nature of partial motions for summary judgment. And so when this case goes back, there's nothing preventing the judge from addressing other issues, such as any possible 11th Amendment immunity or any money damages. And I'd like to remind the Court that no judgment was entered in this case. This case is up here on a stay order, an appeal of a stay order. So there's no judgment. This case is interlocutory. And when a case is interlocutory, the district judge can revisit any decision or make new decisions. So when this case is remanded, there's nothing preventing Judge Gilmour from addressing any other issues, including any possible money damages that might survive an 11th Amendment immunity defense. But that sounds... I'm trying to see what the difference is here of opinion between you two at this stage. You're saying the district court can handle everything below. That sounds like, then, we should remand the case. Well, Your Honor, it's really a matter of black-letter law. The state is immune to money damages claim under the 11th Amendment. So I believe this court could very clearly rule on that and avoid further litigation in the district court. I think, Your Honor, this issue of tasers... Are you saying that we reach the 11th Amendment issue here in the first instance, or do we remand? Your Honor, I'd like you to address it in the first instance here, just to provide guidance, because otherwise we're going to keep litigating this case over and over again. You know, Your Honor, the whole issue of tasers and electric guns, that's a dead issue. It was basically dead when the Cayetano v. Massachusetts case was decided by the Supreme Court. That really kind of put everyone on notice that really tasers are not a viable issue. And since then, courts everywhere have been amending their statutes, settling lawsuits, courts have been issuing decisions. It's really an issue that really needs to be put to bed. We've done that by amending our statute, and yet this litigation continues. I'm asking the court to make a clear ruling that this is moot. There is no case or controversy left here. There's no point in continuing to litigate this in the district court or on another appeal to this court. This matter has to be put to bed. There are so many other issues regarding the Second Amendment that are going to have to be addressed as a result of the Bruin case. So wasting more judicial time and resources, arguing about a case that is moot on many, many different levels just doesn't make any sense. Your Honor, Mr. Stambouli, I think, admitted that his client can get an electric gun, and that is really not disputed. I think he said he has one. Even more so, Your Honor, if he already has one. Because, you know, the city and county of Honolulu is granting seller licenses. The sellers are selling to consumers. I don't think it's disputed that you can get an electric gun. So there really is no case or controversy left here, and this matter really should be put to bed. Now, Your Honor... Counsel, I'm sorry to interrupt you, but did you make the Eleventh Amendment argument you're asking us to adopt now in your brief to this court? No, we did not, Your Honor. Well, actually, I did, actually, in my brief. In my brief, I argued that any lingering damage claim would be barred by the Eleventh Amendment. So yes, in my brief, I did argue that. And anyway, Your Honor, there are other issues in this appeal. You know, jurisdiction. Again, you know, if the court wants to rule on jurisdiction, it can, but I don't think it has to. I think it would be better to rule on mootness. As far as jurisdiction goes, you know, this case was stayed just pending U.S. Supreme Court decisions. That's not unusual. It wasn't the kind of lengthier, definite kind of stay that other cases have struck down. As far as the merits, you know, I think events have proven that Judge Gilmour was correct. The Bruin case has completely changed since the Second Amendment analysis. So it was actually wise for her to stay this case pending Bruin, given what happened. So there are other issues in this case that this court can address. But again, I'd like to just go back to the whole mootness issue. You know, Your Honor, this case really, it needs to be put to bed. You know, the time and the resources that are being put into this really are a complete waste for the judiciary as well as for the parties. And so I don't see where you argued sovereign immunity in your brief. If you'd give me a minute, Your Honor. Sure. I'm seeing somewhat of an argument on page 18 of the answering brief and potentially on page 19. But I stress potentially because it certainly was not, it's not being as made as the force it was being made with today in the briefing to this court. Well, Your Honor, yes, I raised the Eleventh Amendment issue on 18. And I understand, Your Honor, that you perhaps might have wanted me to argue more, but, you know, I couldn't do another response. You know, I had to put it all in an answering brief and I had no opportunity to respond to their reply. But in any event, Your Honor. Then do you think it's more appropriate for the district court to determine whether or not you've waived sovereign immunity? Your Honor, the court, the district court could rule on this if this court wants to. But again, you know, this is an issue that really needs to be put to bed. The whole issue of tasers, stun guns, it's really not a viable issue anymore. And to continue to waste time and resources arguing about this when there's a statute that is allowing people to buy tasers and electric guns, it just makes no sense. So if that is all, Your Honors, thank you. Thank you very much, Counsel. May I proceed, Your Honors? Yes. So I just have a couple things. You know, we heard my friend say the 2016 Caetano decision, it ended everything. And yet Hawaii, here we are in 2022 with an electric gun repeal bill that didn't go into effect until January 1st of 2022. And if it really was as dead as my friend says it is from a 2016 Supreme Court case, which I think it was too, then why wouldn't the district judge rule on it? This case was brought to her in April of 2018, two years after the Supreme Court ruled on it. It's a clear-cut issue. Stun guns are protected. Hawaii has a ban. It doesn't matter what intermediate scrutiny means, and we don't have to get into any of that because Heller was very clear. Categorical ban, it's invalid. I'm overgeneralizing, but that's basically the gist of it. And yet here we are, and I keep going back to this here we are thing because I'm in front of the court. I'm spending my own money to be here because it's important. It's important for the judges to have to rule on these cases. Even if they don't want to, it's fine. They have to rule on them. We are doing this case under 1983. I'm paying out of my own pocket for all of this. So I have, you know, I'm very, like, not emotional is the right word, but it just, like, it pains me when I have a client that can't get his relief in court. Good or bad, it doesn't matter. We had another case in front of Judge Seabright, another case in front of Judge Kaye. Judge Seabright stayed the case for a few months pending young and then immediately unstated, lifted the stay and gave us a ruling. We won in his case. We lost in Teeter, which is also before this case. It doesn't matter if we win or lose. We get a judgment from the court. That's my client's right to get a judgment. We're in the court. And I'll say one other thing. Young's not done. Young's not done. And my friend says that Young's concluded. It's not concluded. And we have the Ma case that we cited to in our opening brief where it talks about I'm sorry, Hoying Young, sorry, where it says that we have, if we're going to be stayed on an indefinite stay pending some other case up to the Supreme Court, then we have a remand. And this goes on and on. When does it end? And I'm hoping that you can answer that question. Thank you very much. All right. Thank you, counsel. I thank both counsel for an excellent argument. Roberts v. Cummings will be submitted.
judges: WARDLAW, NGUYEN, OWENS